IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ERNESTO MARTINEZ-GONZALEZ,

        Plaintiff

        v.

AMR CORPORATION d/b/a AMERICAN
AIRLINES,

        Defendant

CIVIL NO. 10-2002 (JP)

## OPINION AND ORDER

Before the Court is Defendant AMR Corporation d/b/a American Airlines, Inc.'s ("American") motion for summary judgment (**No. 15**). Said motion is unopposed (Nos. 19 and 20). Plaintiff filed the instant case in the Superior Court of Puerto Rico alleging violations of Law 80 of May 30, 1976 ("Law 80"), P.R. Laws Ann. tit. 29, §§ 185a *et seq*. Thereafter, Defendant removed the case to the District Court for the District of Puerto Rico and filed the instant motion for summary judgment asserting that the Law 80 claims are preempted by the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151 *et seq*. For the reasons stated herein, Defendant's motion for summary judgment is hereby **GRANTED.**

### I.

### MATERIAL FACTS NOT IN GENUINE ISSUE OR DISPUTE

The following facts are deemed uncontested ("UMF") by the Court because they were included in the motion for summary judgment

CIVIL NO. 10-2002 (JP)            -2-

(No. 16) and were properly supported by evidence and not genuinely opposed.

1.    Ernesto Martínez-González ("Martínez") was employed by American as a Fleet Service Clerk on July 30, 1998.  He was employed by American as a Crew Chief from December 22, 2003 until September 30, 2008.

2.    During his employment with American, Martínez was employed in a class of employees represented by the Transport Workers Union of America, AFL-CIO ("TWU"), a labor organization that has been certified as the exclusive bargaining representative for American's fleet service clerks and crew chiefs.

3.    As required by the Railway Labor Act, American and the TWU have negotiated and made a series of agreements that set the rates of pay, hours and working conditions of fleet service workers employed by American.  The most recent agreement governing the rates of pay, hours and working conditions of fleet service employees became effective on April 15, 2003 ("Agreement").

4.    Article 28 of the Agreement recognizes among other rights and obligations, American's authority to manage the workplace, set rules of conduct, and maintain discipline and efficiency.

CIVIL NO. 10-2002 (JP)          -3-

5.    Articles 30 and 31 of the Agreement sets limitations on when an employee can be disciplined, who must be notified and permitted to participate in disciplinary proceedings, and requires that a discharge be justified under the Agreement if challenged by an employee.

6.    Articles 31 and 32 establish the grievance procedure ending in compulsory arbitration before a board of adjustments to resolve disputes growing out of grievances, or out of the interpretation or application of the Agreement.

7.    An employee who believes that he has been unjustly dealt with or that any provisions of the Agreement have not been properly applied or interpreted may present a grievance through his representative to his supervisor.  If the decision of the supervisor is not satisfactory, the grievant may appeal to the Chief Operating Officer with a copy to the appropriate Human Resources office.  The Chief Operating Officer will fully investigate the facts of the matter and will render a decision.  If the decision of the Chief Operating Officer is not satisfactory to the employee, the grievance and the decision may be appealed to the appropriate Board of Adjustment.

8.    The decisions of the Board of Adjustments are final and binding and are subject only to review in the district

CIVIL NO. 10-2002 (JP)            -4-

       courts of the United States, to be filed within two years
       of the adverse decision.

9.     In addition to the written Agreement, both American and
       the Crew Chiefs are bound by customs and practices that
       evolved under the written Agreement.   In arbitration
       proceedings, such practices are often asserted as having
       created a right in the application of the written terms.
       Those practices become the rule in the craft or class as
       they develop in the application of the collective
       bargaining agreements from time to time.   In the industry,
       they are referred to as "minor disputes" resolved through
       the grievance arbitration procedures.

10.    American terminated Martínez's employment on September 30,
       2008 because of his unsatisfactory attendance in violation
       of the Company's Attendance Control Policy.

11.    The Company's Attendance Control Policy for TWU Employees
       states, in relevant parts, that:

            **American Airlines Attendance Policy Overview**

While employed at American Airlines, you make your own
personal record of attendance, and it is your
responsibility to maintain a good record.   All employees
are expected to strive for perfect attendance.

                           * * *

        **American Airlines Sick Leave Benefit Policy Overview**

If you will not be reporting to work as scheduled, you are
obligated to notify your supervisor as far in advance of

CIVIL NO. 10-2002 (JP)                    -5-

your scheduled shift as possible. **Notification of Absence is a Job Requirement.**  Failure to notify the Company of your anticipated absence is also a violation of American Airlines' Rule of Conduct No. 2 and may result in corrective action under either the Attendance <u>or</u> the Performance policies of the Company.

* * *

### **American Airlines Control Policy Procedures Overview**

The Attendance Control Policy procedures apply to TWU represented employees on U.S. payroll.

Each employee's record must be viewed on its own merits, on a case by case basis, in determining whether that record meets Company standards. Your supervisor will review your attendance record and may have discussions with you regarding your attendance.

* * *

### **Abuse of the Sick Leave Benefit**

When your attendance record indicates suspected abuse of the sick leave benefit, you may be required by your supervisor to provide a doctor's slip to be eligible for sick leave pay.  If you do not provide a doctor's slip when required, you will not be paid.

* * *

### **Progressive Corrective Action Steps**

Your record may be considered <u>unsatisfactory</u> due to late arrivals, unpaid absences, sick leave abuse, 'no calls', or, some combination of all of the above.

Your inability to correct an unsatisfactory record will result in the issuance of two progressively stronger written warning letters followed by termination of employment.  The corrective action steps are:

· First Step Advisory – Attendance
· Second Step Advisory (Final Warning) – Attendance
· Final Advisory/Termination – Attendance

CIVIL NO. 10-2002 (JP)              -6-

The First and Second Step Advisory letters remain in
effect for two years after they are issued.  Once issued,
a Second Advisory <u>Final Warning</u> remains in effect, even
after the First Advisory's two year expiration date.
Note: The Progressive Corrective Steps only apply to
employees who have completed the probationary employment
period.

12.   On August 17, 2007, American, per its Attendance Control

      Policy, requested that Martínez provide a valid doctor's

      slip for each of his absences for a period of ninety (90)

      days commencing on August 17, 2007, because it suspected

      Martínez of abuse of his sick leave benefit.

13.   Pursuant to the Progressive Corrective Action Steps of the

      Attendance Policy, American issued Martínez a First

      Advisory on September 25, 2007, for his unsatisfactory

      attendance.

14.   On December 19, 2007, American issued Martínez his Second

      Advisory.

15.   On September 30, 2008, when American issued Martínez his

      Final Advisory, his attendance record reflected that he

      had been absent from work on ten occasions for a total of

      264.1 hours of lost time since his Second Advisory.

      Additionally, on two occasions during that time period,

      Martínez failed to call in prior to his scheduled start

      time.

CIVIL NO. 10-2002 (JP)          -7-

    16.   Pursuant to Article 31 of the Agreement, Martínez filed a "Statement of Grievance" with the TWU on September 30, 2008.

    17.   Martínez's grievance was heard by the Chief Operating Officer on October 17, 2008, and denied that same day.

    18.   Martínez appealed American's decision to discharge him from his position to the appropriate Board of Adjustments as permitted under Articles 31 and 32 of the Agreement; however, the TWU withdrew the case.

    19.   Martínez did not pursue his case after the TWU withdrew.

## II.

### LEGAL STANDARD FOR A MOTION FOR SUMMARY JUDGMENT

Summary judgment serves to assess the proof to determine if there is a genuine need for trial. Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990). Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the record, including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, viewed in the light most favorable to the nonmoving party, reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Zambrana-Marrero v. Suárez-Cruz, 172 F.3d 122, 125 (1st Cir. 1999) (stating that summary judgment is appropriate when, after evaluating the record in the light most favorable to the non-moving party, the

CIVIL NO. 10-2002 (JP)          -8-

evidence "fails to yield a trial worthy issue as to some material fact"); Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993); Canal Ins. Co. v. Benner, 980 F.2d 23, 25 (1st Cir. 1992).  The Supreme Court has stated that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In this way, a fact is material if, based on the substantive law at issue, it might affect the outcome of the case.  See Mack v. Great Atl. and Pac. Tea Co., Inc., 871 F.2d 179, 181 (1st Cir. 1989).

On a summary judgment motion, the movant bears the burden of "informing the district court of the basis for its motion and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the movant meets this burden, the burden shifts to the opposing party who may not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through the filing of supporting affidavits or otherwise, that there is a genuine issue of material fact for trial. See Anderson, 477 U.S. at 248; Celotex, 477 U.S. at 324; Goldman, 985 F.2d at 1116.

CIVIL NO. 10-2002 (JP)          -9-

### III.

### ANALYSIS

Defendant argues that summary judgment is appropriate because Plaintiff's Law 80 claim for wrongful termination is preempted by the RLA.   Plaintiff did not oppose the argument.   The Court will now consider Defendant's argument.

Law 80 prohibits the dismissal of employees without just cause. Alvarez-Fonseca v. Pepsi Cola of Puerto Rico Bottling Co., 152 F.3d 17, 28 (1st Cir. 1998).   After the employee proves that he was discharged and alleges that the dismissal was unjustified, the employer has to establish by a preponderance of the evidence that the dismissal was for good cause.   Hoyos v. Telecorp Communications, Inc., 488 F.3d 1, 6 (1st Cir. 2007).

Under the RLA, disputes that deal with the interpretation and enforcement of agreements, such as the one here, covering "rates of pay, rules, or working conditions" are considered minor disputes. Adames v. Executive Airlines, Inc., 258 F.3d 7, 11 (1st Cir. 2001) (citing 45 U.S.C. § 151a).   Said minor disputes are subject to the exclusive jurisdiction of the board of adjustment.   See id. (citing Andrews v. Louisville & Nashville Railroad Co., 406 U.S. 320, 324 (1972); Consolidated Rail Corp. v. Railway Labor Executives' Association, 491 U.S. 299, 303-04 (1989); Rosa Sánchez v. Eastern Airlines, Inc., 574 F.2d 29, 32 (1st Cir. 1978)).   When a complaint is determined to constitute a minor dispute, said state law cause of

CIVIL NO. 10-2002 (JP)            -10-

action would be preempted by the RLA.  Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 252-53 (1994).  Specifically, any claim requiring the application or interpretation of a collective bargaining agreement ("CBA"), such as the Agreement here, can only be decided by the boards of adjustments.  Id. at 256.  As such, the key issue here is whether resolution of Plaintiff's Law 80 claim hinges on an interpretation of the Agreement.  Adames, 258 F.3d at 11 (citing Filibotte v. Penn. Truck Lines, Inc., 131 F.3d 21, 26 (1st Cir. 1997)).

After considering the argument, the Court finds that Plaintiff's Law 80 claim is preempted.  Courts have consistently resorted to the interpretation of employment contracts and a company's rules of conduct to determine whether a dismissal was for just cause under Law 80.  E.g., Santiago v. Kodak Caribbean, Ltd., 129 D.P.R. 763, 775-76 (1992) (interpreting employee manual containing workplace rules that establish the norms, benefits, and privileges of employees and that also are part the employment contract).  Here, the undisputed facts show that the rules used by American as the basis for dismissing Plaintiff, the one's he challenges as unjust, were adopted pursuant to a CBA.  Because any analysis of said rules will necessarily entail interpretation of the Agreement, Plaintiff's situation is a minor dispute for purposes of the RLA, and jurisdiction only lies with appropriate board of adjustment pursuant

CIVIL NO. 10-2002 (JP)              -11-

to Articles 31 and 32.  Accordingly, the Court **GRANTS** Defendant's

motion for summary judgment.

**IV.**

**<u>CONCLUSION</u>**

In conclusion, the Court **GRANTS** Defendant's motion for summary

judgment.   The Court will enter a separate judgment dismissing

Plaintiff's complaint.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 17th day of May, 2011.


                                                 s/José Antonio Fusté
                                             JOSÉ ANTONIO FUSTÉ
                                          UNITED STATES DISTRICT JUDGE